Date signed March 17, 2008



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| CHARLES EDWARD WILLIAMS, | * | Case No. 05-28334-JS |
| Debtor | * | Chapter 7 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| SEAN C. LOGAN, TRUSTEE, | * | |
| Plaintiff | * | |
| v. | | Adv. Proc. No. 06-2028-JS |
| | * | |
| CHARLES EDWARD WILLIAMS, et al., | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *MEMORANDUM OPINION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [PP. 38, 39, 48], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [P. 40], OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTIONS [P. 30] AND DISMISSING TRUSTEE'S COMPLAINT FOR AVOIDANCE OF LIEN, TURNOVER OF PROPERTY AND MONEY DAMAGES*

The matters before the Court are the Chapter 7 trustee's objection to exemptions claimed by the debtor and cross motions for summary judgment filed by the parties to the Chapter 7 trustee's complaint for avoidance of lien, turnover of property and damages.  For the reasons stated, the defendants' motions for summary judgment will be granted, the plaintiff/trustee's motion will be denied, the trustee's objection to the debtor's exemptions will be overruled and the instant complaint will be dismissed.[1]

*FINDINGS OF FACT*

1.  On August 17, 2005, Charles Edward Williams  (the "debtor"), by his attorney, Joseph M. Guida, filed the instant voluntary Chapter 7 bankruptcy petition, together with schedules and all related documents.[2]  On the petition date, Mr. Williams was married to Angel L. Williams, his non-filing spouse.  Together as tenants by the entireties they owned a residence located at 45 Russell Road, Colora,

---

[1]This Court has subject matter jurisdiction in these matters because they concern objections to exemptions and the turnover of property of the estate, which are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (E).

[2]Because this case was filed before October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") (Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005), the Bankruptcy Code applies as it existed before it was amended by BAPCPA.  While the amendments did not change the substantive law that is applicable to this opinion, they did alter the enumeration of the applicable sections of the Code.

Cecil County, Maryland 21917 (the "Property").  Deed dated August 27, 1997,

Exhibit A to the Complaint.

2.  On Schedule A, the debtor valued the Property at $230,000, subject to a lien

in the amount of $102,417.86, in favor of Countrywide Home Servicing LP

("Countrywide"), his sole secured creditor.

3.  On Schedule C, the debtor claimed an exemption in the Property only in the

amount of $127,582.14, citing "Md. Cts. & Jud. Proc. Code § 11-504(c)(3)(f)."  While

no such statutory section exists, it is understood and stipulated that the section

intended to be cited was Maryland Courts and Judicial Proceedings Code § 11-504(f),

the so-called "wild card exemption," which allows the debtor an exemption of up to

$5,000 in real or personal property of his choice.

4.  However, at the top of Schedule C, debtor's counsel checked off the box

which indicates that "Debtor elects the exemption to which debtor is entitled under 11

U.S.C. § 522(b)(2)[3] (Exemptions available under applicable nonbankruptcy federal

laws, state or local law where the debtor's domicile has been located for the 180 days

immediately preceding the filing of the petition, or for a longer portion of the 180-day

period than in any other place, and the debtor's interest as a tenant by the entirety or

joint tenant to the extent the interest is exempt from process under applicable

_____

[3]Post BAPCPA, this is enumerated 11 U.S.C. § 522(b)(3)(B).

nonbankruptcy law." Schedule C to the Petition. Under the laws of Maryland, it is uncontested that, conditioned upon the non-existence of joint creditors, property held by the entireties by the debtor and his non-filing spouse is completely exempt from the bankruptcy estate to the full extent of its fair market value.

5. The debtor did not indicate specifically that the Property was owned as tenants by the entireties with Angel Williams. In Schedule A, he indicated his interest in the Property as "fee simple." However, in Schedule H, he listed Angel Williams as co-debtor on the mortgage to Countrywide.

6. On September 27, 2005, the first occasion upon which a meeting of creditors was held, the debtor appeared but did not bring any documents with him, specifically the deed to the Property and a credit report. On that occasion, the debtor was represented by Lawrence P. Pinno, Jr.,[4] who advised the trustee that the Property was owned by the debtor and his then-wife as tenants by the entireties, and that the debtor and his wife were separated, but had not been divorced. At the conclusion of the meeting, the trustee commented, "You've got lots of equity in the house. As counsel told you, creditors can't touch it unless you have joint debt. I need a credit report to

---

[4]There is no indication on the docket that Mr. Pinno ever filed his appearance as debtor's counsel of record. In the debtor's Statement of Financial Affairs which he filed as part of his petition, Mr. Pinno was listed as having been paid a counsel fee of $750 and the Chapter 7 filing fee of $209 by the debtor in April 2005.

verify that, so that when the creditors come back to me and say, 'Why didn't you sell the house, trustee?', I can say, 'You didn't have any joint debt.'" Sound recording of the meeting of creditors dated September 27, 2005.

7.  The meeting was continued pending the debtor's production of the requested documents.  No docket entry was made that indicated that the meeting of creditors had been conducted.

8.  On November 30, 2005, the debtor was granted a discharge, entered by order [P. 9].

9.  On February 7, 2006, Mr. Guida, the debtor's counsel of record was disbarred by the Court of Appeals of Maryland based upon his conduct in an unrelated case.  *See Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 891 A.2d 1085 (2006).

10.  On February 9, 2006, a docket entry was filed that stated, "Meeting of Creditors Rescheduled to 3/29/2006 at 09:00 AM at x 300 W. Pratt, #375, Baltimore, MD (Logan, Sean)", followed on February 15, 2006, by a notice of same.

11.  On February 16, 2006, the debtor and Ms. Williams attended a hearing and testified in a proceeding before the Circuit Court for Harford County, Judge William O. Carr presiding (the "Circuit Court"), in which she was seeking an absolute divorce.

12.  On March 2, 2006, the Circuit Court granted Ms. Williams a judgment of absolute divorce.  Exhibit B to the Complaint.  At the time of the judgment, and as a

part thereof, the debtor was given a first option to purchase from Ms. Williams her interest in the Property, to be exercised by him within 90 days from February 16, 2006. *Id.*

13. On March 29, 2006, the debtor failed to appear at the rescheduled meeting of creditors and therefore did not produce the requested documents. The meeting was continued again, pending the debtor's production of a credit report. At some point, the trustee also requested a copy of the divorce decree from the debtor. As before, no docket entry was made that indicated that a meeting of creditors was conducted.

14. On April 7, 2006, a "Notice to Debtor Whose Attorney has Been Suspended or Disbarred From the Practice of Law in This Court" [P. 11] was entered on the docket, in which the debtor was advised to engage substitute counsel. *Id*.

15. On May 16, 2006, the trustee filed a "line" that indicated that he had discovered possible assets in the case, and requested the Court send a notice of assets to creditors, instructing them to file proofs of claim.

16. Between June 1 and August 1, 2006, ten creditors filed proofs of claim. All of the proofs of claim represented individual debts of the debtor only and not joint debts of the debtor and his non-filing wife.

17. On July 24, 2006, by supplemental order, the Circuit Court granted the debtor 30 days from July 11, 2006 to obtain refinancing on the Property to permit his

former spouse to be released from the mortgage.  Exhibit C to the Complaint.  On that date, the Property was valued at $215,000, and the Circuit Court awarded Angel Williams one-half of that amount minus the one-half of the amount owed on the existing mortgage to Countrywide.

18.   On August 25, 2006, the debtor refinanced the Property with Saxon Mortgage, Inc. ("Saxon") for $188,900.  Settlement, Escrow, and Abstract Solutions, Inc. ("Settlement Solutions") conducted the settlement, at which time Angel Williams received a distribution of $52,552.66,  partly in consideration of her half of the equity in the Property, and partly for past-due child support in the approximate amount of $15,000.  Deed of trust, recorded September 27, 2006, Exhibit to Saxon's Motion for Relief from Automatic Stay [P. 26] in the bankruptcy case.

19.   The refinance of the Property and disbursements were made without the prior permission of this Court or the Chapter 7 trustee.

20.   On September 22, 2006, the trustee learned from Robert Judd, Mr. Williams' divorce attorney, that Mr. Williams had refinanced the Property 29 days earlier and acquired Angel Williams' interest in the Property.  Complaint, ¶ 14.

21.  A docket entry dated September 26, 2006 indicated that a third meeting of creditors was scheduled for October 10, 2006.

7

22. Before the meeting of creditors scheduled to occur on October 10, 2006, the debtor sent a credit report to the trustee, which the trustee deemed insufficient because it did not differentiate between joint and individual debts.

23. On October 9, 2006, one day before the next meeting of creditors was scheduled, the trustee filed "Application to Employ Patrick J. Hurley and Coldwell Banker Residential as Real Estate Agent to the Trustee" [P. 21], in order to market the Property. The application made no mention of the trustee's knowledge that the Property had been refinanced.

24. At the October 10, 2006 meeting of creditors, the trustee did not advise the debtor that he had filed the application to employ a realtor to sell the debtor's house. The debtor appeared without Mr. Pinno, whom the trustee contacted by telephone. Mr. Pinno explained that he had noted the hearing for the wrong date. The debtor presented the trustee with the divorce decree as well as a credit report that the debtor insisted listed all of his debts as individual debts. The trustee acknowledged receipt of the divorce decree and that the credit report distinguished between joint debts and individual debts, but insisted that the debtor supply him with copies, rather than original documents. During the trustee's telephone call to debtor's counsel, Mr. Pinno advised the trustee that he had faxed a similar credit report to the trustee's paralegal. The meeting of creditors was continued again because the trustee wanted copies of the

8

documents that had been presented. Apparently without looking at the date of the divorce decree, the trustee advised Mr. Pinno and the debtor that the Property was no longer exempt as property held by the entireties. The trustee advised Mr. Pinno to file an amended Schedule C, which Mr. Pinno said he would do but did not. A docket entry dated October 16, 2006 reads, "Meeting of Creditors Continued on 11/9/2006 at 10:00 AM at 341 meeting room #2650 at 101 W. Lombard St., Baltimore."

25.  On October 31, 2006, this Court entered an order [P. 23] granting the trustee's application to employ Patrick J. Hurley and Coldwell Banker as realtors to the trustee to sell the Property.

26.  The November 9, 2006 meeting of creditors was continued again because neither the debtor nor Mr. Pinno attended. A docket entry dated November 14, 2006, states, "Meeting of Creditors Held and Disposition Pending."

27.  Since November 14, 2006, there have been no entries on the electronic docket regarding any rescheduled meetings of creditors.

28.  On December 11, 2006, the Chapter 7 trustee filed the instant adversary proceeding on behalf of the debtor's bankruptcy estate against the debtor and Ms. Williams, Saxon and Settlement Solutions to avoid the mortgage lien as a postpetition transfer pursuant to 11 U.S.C. § 549, to recover one-half of the unencumbered equity in the Property pursuant to 11 U.S.C. § 542, to recover damages for violation of the

9

automatic stay pursuant to 11 U.S.C. § 362 and to set aside the sale as a fraudulent transfer pursuant to the Maryland Uniform Fraudulent Conveyances Act.

29.  On January 10, 2007, Saxon filed a motion for relief from automatic stay [P. 26] against the debtor and the trustee in which it alleged that the debtor was in default on the refinanced mortgage of the Property.  A consent order between the trustee and Saxon staying the motion pending the disposition of the instant adversary proceeding was entered on January 31, 2007 [P. 28].

30.  On September 18, 2007, the trustee filed an objection [P. 30] to the debtor's exemption of the Property in the debtor's bankruptcy case, nearly ten months from the adjournment of the last meeting of creditors on November 9, 2006.

31.  Thirty-two days elapsed from the last-held meeting of creditors on November 9, 2006, until the trustee filed the instant complaint on December 11, 2006. However, a careful reading of the complaint indicates that it was not an objection to the exemption and that it did not raise any issue regarding the debtor's right to claim an exemption in the Property.  On February 15, 2007, for the first time in the adversary proceeding, the issue of the debtor's exemption of the Property was raised by Saxon's motion to file a counterclaim [P. 13].  By order [P. 33] entered on June 26, 2007, this Court authorized the filing of the counterclaim, and it was officially filed

10

the same day [P. 34].  The trustee filed his answer to the counterclaim on July 6, 2007

[P. 36].  The motions for summary judgment were filed thereafter.

32.  If the debtor's exemption of the Property is upheld, the result will be no

distribution to unsecured creditors.

***ISSUES PRESENTED***

The issues presented are whether the trustee's objection to the debtor's

exemption of the Property was timely, and if so, whether it was also meritorious; and

accordingly, whether the instant complaint to avoid the postpetition mortgage and

recover the debtor's interest in the Property has a meritorious basis.

***CONCLUSIONS OF LAW***

I.

*WHETHER THE TRUSTEE'S OBJECTION TO EXEMPTIONS WAS TIMELY*

1.  Section 341 of the Bankruptcy Code provides the statutory basis for holding

meetings of creditors in a bankruptcy case.[5]

---

[5]On the petition date, Section 341 provided as follows:

### § 341. Meetings of creditors and equity security holders

(a) Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

(b) The United States trustee may convene a meeting of any equity

11

2.  "A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."  Fed. R. Bankr. P. 4003(b).  If an objection to exemptions is filed later than 30 days after the conclusion of the meeting of creditors, the exemption is allowed up to the amount declared, whether or not the exemption was

———————————

security holders.

(c) The court may not preside at, and may not attend, any meeting under this section including any final meeting of creditors.

(d) Prior to the conclusion of the meeting of creditors or equity security holders, the trustee shall orally examine the debtor to ensure that the debtor in a case under chapter 7 of this title is aware of–

(1) the potential consequences of seeking a discharge in bankruptcy, including the effects on credit history;

(2) the debtor's ability to file a petition under a different chapter of this title;

(3) the effect of receiving a discharge of debts under this title; and

(4) the effect of reaffirming a debt, including the debtor's knowledge of the provisions of section 524(d) of this title.

*Id.*

properly claimed. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1648, 118 L. Ed. 2d 280 (1992).

3.    The meeting of creditors "may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice." Fed. R. Bankr. P. 2003(e).  As one authoritative treatise has stated:

> Once it is scheduled and takes place, the meeting of creditors may be adjourned or continued to another fate and time, with notice given only to those in attendance at the meeting.  Such a continuance may be necessary, for example, if the debtor is unable to attend due to illness, or if further questions or investigation of the debtor is necessary.  The practice of keeping meetings alive in such cases by successive continuances has been common and has much to commend it; it saves delay and expense in calling creditors together to consider special matters and often makes prompt action possible.

> However, meetings of creditors should not be routinely continued if no special circumstances warrant such action.  In a few jurisdictions, United States trustees have permitted all creditors' meetings to be continued indefinitely in order to prevent the expiration of the 30-day time period for objecting to exemptions, which commences at the conclusion of the meeting.  This practice plainly violates the intention of the Federal Rules of Bankruptcy Procedure that there be a deadline for trustees and creditors to object to exemptions so that the exemption issues can be settled expeditiously.  If a trustee needs further information in order to decide whether to object to an exemption, the trustee should either continue the section 341 meeting to a definite date or seek an extension of time to file objections to the exemption.

3 Collier on Bankruptcy, ¶ 341.02[5][g] (15th ed. rev. 2007).

13

4.  The issue of how long a trustee may adjourn a meeting of creditors and thereby keep open the period to object to the debtor's claim of exemption has resulted in three distinct lines of cases.

A.  Cases in the first group embrace a so-called "bright-line" rule, holding that if a trustee does not announce a specific date to which the meeting is being continued within 30 days of the last meeting held, the meeting will be deemed to have been concluded on the last date it was convened.  *See Smith v. Kennedy (In re Smith),* 235 F.3d 472, 476-77 (9th Cir. 2000) ("To authorize trustees to adjourn meetings indefinitely, even when it is unlikely that any subsequent meeting will in fact be called, would nullify the thirty-day requirement of Rule 4003(b). . ."; *In re Levitt,* 137 B.R. 881, 883 (Bankr. D. Mass 1992) (finding a concern in both Rule 2003(e) and 4003(b) "that the option of adjournment not be used to delay indefinitely the date by which objections to claimed exemptions must be filed."); *In re Friedlander* , 284 B.R. 525, 527 (Bankr. D. Mass. 2002) (failure of the trustee to set a date certain for a reconvened meeting within 30 days of the adjourned meeting and doing nothing for almost two years results in waiver of the right to object.).[6]

---

[6]The *Levitt* case has most likely been overruled by the First Circuit Bankruptcy Appellate Panel in *Premier Capital, Inc. v. DeCarolis (In re DeCarolis)*, 259 B.R. 467, 470-71 (1st Cir. BAP 2001) (not deciding between the case-by-case approach or the "not concluded until ordered" approach, but ruling out *Levitt's* bright-line rule). Accordingly*, Friedlander* is also of doubtful precedence.

14

B.  A second line of cases holds that whether the trustee's delay in concluding the meeting was reasonable is to be determined on a case-by-case basis.  *See In re James*, 260 B.R. 368, 372 (Bankr. E.D. N.C. 2001) (finding that although a bright-line rule would be preferable, the court must examine each case until the court adopted a local rule.); *In re Bace*, 364 B.R. 166, 179 (Bankr. S.D. N.Y. 2007) (finding the case-by-case approach persuasive and refusing to impose a bright-line rule without advance warning.); *In re Cherry*, 341 B.R. 581, 587 (Bankr. S.D. Tex. 2006) ("A case-by-case approach is most appropriate" because it "affords a trustee discretion in complicated cases yet restrains a trustee's ability to indefinitely postpone a meeting of creditors."); *In re Brown*, 221 B.R. 902 (M.D. Fla. 1998) (finding that a case-by-case method is best because "[t]rustees should have the discretion to perform their duties; however, some limitation based on reasonableness should apply.); *Petit v. Fessenden (In re Petit)*, 182 B.R. 59, 63 (D. Me. 1995) (declining to adopt a bright-line rule but instead looking to the reasonableness of delay.).

C.  A third line of cases holds that a meeting of creditors is never concluded until either the trustee declares it to be concluded or the court so orders.  *In re Koss*, 319 B.R. 317, 321 (Bankr. D. Mass. 2005) (finding that "a § 341 meeting is not concluded until the trustee so declares *or the court so orders."*) (emphasis in original); *In re Flynn*, 200 B.R. 481, 484 (Bankr. D. Mass. 1996) (same); *In re DiGregorio*, 187

B.R. 273, 276 (Bankr. N.D. Ill. 1995) (same).  Under the latter line of cases, a party

seeking to refinance a possibly exempt asset would have to file a motion to conclude

the meeting, and the court could only order the trustee to conclude the meeting if the

court determined that the trustee had acted in an arbitrary or capricious manner in

continuing the meeting.  *DiGregorio*, 187 B.R. at 276.

5. This Court agrees with those cases holding that Rule 2003(e) does not create

nor allow for a bright-line rule.  "The Bankruptcy Code does not define 'may' but

defines 'may not' as prohibitive and not permissive."  *See Flynn*, 200 B.R. at 483

(*citing* 11 U.S.C. § 102(4)).  Other published decisions agree that in the context of

Rule 2003(e), "may" is permissive; it is just one method by which a trustee might

adjourn a meeting.  *See id.*, *see also Smith,* 235 F.3d at 475 (O'Scannlain, J.,

dissenting); *but see In re DiGregorio,* 187 B.R. at 276 (finding a trustee is without

authority to continue a meeting generally, but that when he or she does, the meeting

is not concluded until the court so orders.).  It is obvious to this Court that when a

trustee continues a meeting of creditors without announcing a date when the meeting

will be rescheduled, the rule implies that the trustee will provide written notice of the

new date to the debtor and creditors.  *Accord, Cherry*, 341 B.R. at 585.[7]

---

[7]Rule 2003(e) was promulgated to permissively allow a trustee to continue a
meeting of creditors by announcing the future date and time of the continued meeting
without requiring further written notice.  It was not promulgated to render such a

16

6. This Court declines to hold that a meeting of creditors is not concluded until such time as the trustee so declares or the court so orders. Such a holding ignores the clearly-established policy of the Code of encouraging promptness in the filing of objections to exemptions because it would permit a trustee to continue a meeting of creditors indefinitely. *See Cherry*, 341 B.R. at 587; *Brown*, 221 B.R. at 906 (because the adjournment process is based on the trustee's discretion, "some limitation based on reasonableness should apply."). The § 341 meeting "is not a general discovery tool to be kept around for any handy occasion," but is scheduled early by Congress for "the purpose of launching the administration of the case." *In re Vance*, 120 B.R. 181, 197 (Bankr. N.D. Okla. 1990).

7. Accordingly, this Court holds that the determination of whether a meeting of creditors has been properly concluded or continued should be decided on a case-by-case basis.

8. Courts that have adopted the case-by-case approach have considered at least four factors in determining the reasonableness of a trustee's delay in adjourning a meeting of creditors: (1) the length of the delay; (2) the complexity of the estate; (3)

---

method the exclusive means by which a meeting of creditors could be continued. Nor does it require that a continued meeting be rescheduled within 30 days from the original date. Accordingly, this Court will determine whether any delay in reconvening the meeting was reasonable as opposed to enforcing a bright-line rule.

the cooperativeness of the debtor; and (4) the existence of any ambiguity regarding whether the trustee continued or concluded the meeting. *See, e.g., James*, 260 B.R. at 372 (eleven months is unreasonable.); *Bace*, 364 B.R. at 179 (trustee's delay appropriate when debtor did not produce business records.); *Petit*, 182 B.R. 59, 63 (finding trustee's delay appropriate when debtor was "particularly litigious and obstructionist."); *Cherry*, 341 B.R. at 587 (the delay was not unreasonable when the decision to continue the meeting was "clearly announced.").

9. In determining whether the length of delay in objecting to the exemption was unreasonable, the Court must determine from all the facts when the meeting of creditors was concluded and thus when the 30-day objection period began to run. The trustee's delay in objecting to the debtor's exemption of the Property for nearly ten months was unreasonable and excessive. If the reason for objecting was the debtor's mistaken citation of the statutory authority for the exemption, an objection could have been filed early in the case. If the reason for the objection was the failure of the debtor to provide a copy of the deed to the Property, it could have been filed within 30 days after the debtor failed to attend the second meeting of creditors on March 29, 2006. More than six months elapsed between the meetings of creditors on March 29 and October 10, 2006. On the latter occasion, when the trustee was shown proof that the Property was held as tenants by the entireties by reason of the debtor's

18

presentation to him of the deed, he could then have objected to the debtor's failure to properly claim the exemption within 30 days thereafter.  Instead, he waited until September 18, 2007, long after he had filed the instant adversary proceeding to recover the Property.  The Court finds this delay to be excessive and unreasonable.

10.  Having found in Finding of Fact No. 26 that the complaint did not raise any issue regarding the debtor's right to claim an exemption in the Property, the filing of the complaint on December 11, 2006 was not a timely objection to the exemption.  As stated by *Collier*,

> The propriety of the exemption claim may be raised in another proceeding.  To be an adequate substitute for a separate objection to exemptions, however, any such proceeding must clearly put the debtor and the debtor's counsel on notice of the objection to the exemptions claimed and be filed within the deadline set forth in Rule 4003(b).

9 Collier on Bankruptcy, ¶ 4003.03[2] (15th ed. rev.2007), citing *Palatine Nat'l Bank v. Harrigan (In re Harrigan)*, 74 B.R. 224 (N.D. Ill. 1987).  In holding that a motion for relief from stay did not equate to an objection to exemption, Chief District Judge Grady found that the creditor's motion in *Harrigan*, as the trustee's complaint in the instant case, made no mention of the exemption and did not put the debtor on notice of a dispute regarding the exemption.  *Harrigan*, 74 B.R. at 230.

11.  The second factor is whether the case was complex.  The Court has determined that the instant case was not complex.  The delay in filing an objection to

19

the exemption, as trustee's counsel admitted, was due to the fact that the trustee did not realize until approximately two years after the petition and schedules were filed that the debtor had cited an incorrect statute as the basis for the exemption. This reason for the delay militates in favor of a finding that the delay was unreasonable.

12. The third factor also weighs against the trustee. The status of the meeting of creditors was ambiguous at the time the debtor refinanced the mortgage loan on the Property and also when the trustee objected to the exemption. On August 25, 2006, the date the Property was refinanced, the last docket entry relating to meetings of creditors was dated February 9, 2006, and reflected only that the meeting was rescheduled for March 29, 2006. No docket entry reflected what occurred at the March 29 meeting. Given the fact that the debtor received a discharge on November 30, 2005, it was reasonable for Saxon and Settlement Solutions to believe that the meeting of creditors had been held and concluded on March 29, 2006, nearly five months before the Property was refinanced.

13. The meeting status was also ambiguous on September 18, 2007, when the trustee objected to the exemption. As of the date of this opinion, the last update to the status of the creditors' meeting is the entry dated November 14, 2006, which states, "Meeting of Creditors Held and Disposition Pending." This is also ambiguous because there is no notice of a continuance of the meeting or of a rescheduled meeting.

20

From this notation, it is impossible to divine the status of the meeting of creditors, and there is no record of what happened because the meeting was never actually conducted.

14. The fourth factor, and one that weighs in the trustee's favor, is the debtor's tardiness in responding to the trustee's demands for documentation. The debtor's failure to attend some meetings of creditors and to provide documentation as requested on a prompt basis caused the trustee to continue the meetings of creditors on several occasions. At the October 10, 2006 meeting, the trustee stated that his file contained 42 different notes and telephone calls and letters made or sent seeking information regarding the status of the Property. Mr. Pinno bears much of the blame for not complying promptly with the trustee's requests, not filing the amended Schedule C and not appearing at two meetings of creditors. However, the debtor's conduct was not the cause of the unreasonable delay by the trustee in objecting to the exemption after the November 9, 2006 meeting, a delay of ten months until the objection to exemption was filed on September 18, 2007.

15. The trustee acknowledged that he failed to examine Schedule C timely to dispute the debtor's incorrect citation of the appropriate statute.

21

16.  The demand that the debtor turn over copies rather than original documents did not relieve the trustee of the knowledge contained in therein as to status of the title to the Property or that there were no joint creditors present in the case.

17.  Where the propriety of a debtor's exemption of property is in question and the trustee continues the meeting of creditors to allow additional time to perform an investigation, the better practice is for the trustee to file a motion with the bankruptcy court to extend the time in which to object to the exemption.  Much of the ambiguity in the present case was caused by the trustee's failure to file such a motion.[8]

18.  Weighing all of the factors, this Court finds that the trustee's general continuance of the meeting of creditors caused unreasonable delay that rendered untimely his objection to the exemption of the Property.  Under the circumstances of this case, the Chapter 7 trustee's indefinite continuance of the meeting of creditors unreasonably prolonged the period for objecting to the debtor's claim of exemptions and violated the spirit of Bankruptcy Rule 4003(b).

II.

---

[8]Federal Rule of Bankruptcy Procedure 4003(b)(1) requires that such a motion to extend the time in which to object to the debtor's exemptions be filed within 30 days after the conclusion of the meeting of creditors or the filing of any supplemental schedules or amendments to the list of exemptions, that is, the same 30-day period provided by Bankruptcy Rule 4003(b) for filing objections to the exemptions themselves.  The obvious purpose of these time limits is to speed the administration of the case and bring closure to both debtors and creditors.

22

### WHETHER THE PROPERTY WAS PROPERLY CLAIMED AS EXEMPT

19. The filing of a petition in bankruptcy creates an estate comprised of all of the debtor's beneficial interest in property. *In re Mueller*, 256 B.R. 445, 451 (Bankr. D. Md. 2000), citing *In re Miller*, 224 B.R. 913, 916 (Bankr. D. N.D. 1998). "Federal bankruptcy law sets the inclusive bounds of property of the bankruptcy estate, casting an all-encompassing net over assets of every kind and description in which a debtor enjoys an interest. 11 U.S.C. § 541(a). Non-bankruptcy state law governs the nature of the debtor's interest in property." *In re Stoltz*, 283 B.R. 842, 844 (Bankr. D. Md. 2002), citing *American Bankers Ins. Co. v. Maness*, 101 F.3d 358, 362 (4th Cir. 1996), and *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed.2d 136 (1979).

20. The debtor may claim certain property of the bankruptcy estate as exempt in order to obtain a "fresh start." *Mueller, supra*.

21. Because Maryland has "opted out" of the federal exemption scheme, debtors who file bankruptcy in Maryland may only claim exemptions available to them under state law. 11 U.S.C. § 522(b)(1); Md. Cts. & Jud. Proc. § 11-504(g). Exemptions in Maryland are liberally construed. *In re Butcher*, 189 B.R. 357, 369 (Bankr. D. Md. 1995), *aff'd sub nom. Governor Plaza Assoc. v. Butcher (In re Butcher)*, 125 F.3d 238 (4th Cir.1997).

22.   Under Maryland law, entireties property may not be taken to satisfy individual debts of either spouse.  *Diamond v. Diamond*, 298 Md. 24, 29, 467 A.2d 510, 513 (1983).

23.   Section 522(b)(2)(B) of the Bankruptcy Code "exempts from the bankruptcy estate 'any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety' to the extent that the interest 'is exempt from process under applicable nonbankruptcy law.'" *Cordova v. Mayer (In re Cordova)*, 73 F.3d 38, 40 (4th Cir. 1996) (quoting 11 U.S.C. § 522(b)(2)(B)); *see also Owens v. Owens*, 500 U.S. 305, 111 S.Ct. 1833, 114 L. Ed.2d 350 (1991).

24.   Entireties property is exempt from the bankruptcy estate if there are no joint creditors.  *Sumy v. Schlossberg (In re Sumy)*, 777 F.2d 921, 927-928 (4th Cir. 1985).

25.   As husband and wife on the petition date, the debtor and his non-filing spouse owned the Property as tenants by the entirety.  Because there were no joint creditors, the Property was an asset wholly exemptible from the debtor's bankruptcy estate on the petition date.

26.   The trustee was on notice, both from the debtor's selection of the exemption under 11 U.S.C. § 522(b)(2) at the top of Schedule C and from

24

subsequently-obtained knowledge of the deed that the Property in question was held by the debtor and his non-filing spouse as tenants by the entireties and that the debtor has claimed the exemption in the Property on that basis. The trustee was told this by debtor's counsel as early as the first meeting of creditors on September 27, 2005. The trustee's denial of this knowledge is disingenuous.

27. The trustee has cited this Court's opinion in *Allnutt v. Associates Leasing (In re Allnutt)*, 220 B.R. 871 (Bankr. D. Md. 1998) for its statement that "[t]he failure of both the debtor and the plaintiff to claim exemptions of so-called 'entireties property' from administration by the Chapter 11 trustee waived their right to any such exemptions." *Allnut*, 220 B.R. at 892. The trustee's reliance on that statement is misplaced, because as the trustee well knows, *Allnutt* was a case that involved a debtor's bad faith in his obstruction of a Chapter 11 trustee's administration of assets by filing numerous frivolous motions and appeals. After notice and the consummation of the trustee's court-approved sale of estate assets in which the debtor had claimed no interest, the debtor's wife sued the purchasers in the state court, claiming that she owned the assets with the debtor as tenants by the entirety. Suffice it to say, the quoted holding in *Allnutt* is inapposite to the facts of the instant proceeding where, by all accounts, this debtor has acted in good faith without guile. A more apt citation of authority in the present circumstance would be the case of *In re Mueller, supra*,

25

where, in the face of repeated objections by the trustee to the debtors' exemption of a deferred compensation plan, this Court held that "in the absence of fraud or bad faith, the debtors are entitled to amend their schedules, including their list of exemptions." *Mueller*, 256 B.R. at 451.

28.  Indeed, despite a debtor's incorrect citation of proper statutory authority for claiming an exemption, it has been held that in the absence of bad faith, such an innocent mistake will not defeat the exemption. *In re Brown*, 178 B.R. 722, 729 (Bankr. E.D. Tenn. 1995) ("[I]n the absence of fraud, deficiencies in the debtor's exemption schedule do not invalidate the exemptions."); *In re Hickman*, 157 B.R. 336, 339 (Bankr. N.D. Ohio 1993) ("Although a prudent debtor would have provided a statutory basis for the exemption, not doing so does not render it an invalid or 'bad faith' exemption."). In *Hickman*, Judge Speer also pointed out that if the trustee had requested additional time to investigate the claimed exemption, "(e)xtra time surely would have been granted." *Id.*

29.  The granting of an absolute divorce severs a tenancy by the entireties. *Bruce v. Dyer*, 309 Md. 421, 428, 524 A.2d 777, 781 (1987).  When former tenants by the entireties are no longer husband and wife, they continue to hold former marital property as tenants in common. *Millar v. Millar*, 200 Md. 14, 21, 87 A.2d 838, 841 (1952).  However, a tenancy by the entireties is not severed merely because married

26

parties are living separate and apart. *Bruce,* at n.1 (citing *Elko v. Elko*, 187 Md. 161, 49 A.2d 441 (1946). Therefore, it is of no significance that on the petition date, the debtor and his wife were separated and that she had filed for an absolute divorce.

30.  In the instant case. the tenancy by the entireties was not severed until March 2, 2006, 197 days after the petition date, on the day the divorce decree was entered by the Circuit Court for Harford County.  The debtor's interest in the Property as a tenant in common would only have become part of the property of the estate if the divorce or property settlement had occurred within 180 days of the petition date.[9]

---

[9]Section 541(a)(5)(B) so states, as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, whenever located and by whomever held:

\*            \*            \*

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date –

\*            \*            \*

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree.  11 U.S.C. § 541(a)(5)(B).

11 U.S.C § 541(a)(5)(B).

27

Therefore, because the divorce decree was entered more than 180 days after the petition date, the debtor's sole interest in the Property did not come into the bankruptcy estate. *See Cordova*, 73 F.3d at 39 (stating "[b]ecause Cordova's divorce occurred within 180 days of the filing of her bankruptcy petition . . . the fee simple interest that Cordova then held in the home had become property of the bankruptcy estate through § 541(a)(5)(B). . . ").

31. The trustee's recent assertion that a property settlement agreement may have been executed prior to the entry of the divorce decree is not sufficient to defeat the exemption. The trustee has failed to prove the existence of any property settlement agreement that severed the tenancy before February 13, 2006, the date upon which the 180-day period expired. The divorce hearing on February 13, 2006 was contested. The divorce decree that was entered on March 2, 2006, did not incorporate any earlier agreements.[10] Thus, the divorce decree now stands as the sole source of the division of the Property. The brief period between the filing of the petition for divorce and the entry of a parenting order did not create any genuine issue of material

---

[10] In Maryland, a property settlement agreement may either be incorporated or merged into a divorce decree. *See.* Md. Fam. Law, § 8-105. If the decree incorporates the agreement, the divorced parties may either sue on the agreement or for civil contempt. *Id.* If the decree merges the agreement into the order, the parties may only sue for contempt. *Id; see also Langston v. Langston,* 366 Md. 490, 784 A.2d 1086 (2001).

fact regarding a property settlement order.  The trustee asserts that "[a]lthough discovery has yet to uncover a property settlement agreement [providing for a division of the Property in the divorce proceeding], but considering that divorce proceedings began on June 1, 2004, and a Parenting Agreement was entered on June 7, 2005 it may reasonably be inferred that by February 13, 2006 (the 180th day after the Petition Date), an agreement had been reached that Debtor would acquire Angel Williams' interest in the Property."  Trustee's Opposition to Angel Williams' Motion for Summary Judgment [p.49], footnote 4.  The trustee's assertion that a reasonable inference exists that the parties had entered into a property settlement agreement before the entry of the divorce decree is based entirely upon conjecture.  A reasonable trier of fact could not find the existence of a prior property settlement agreement from these facts.

32. Accordingly, the trustee's pending objection to the debtor's exemption will be overruled on the merits.

### III.

*WHETHER THE COMPLAINT MAY SURVIVE SUMMARY JUDGMENT*

33. The trustee's complaint to avoid the postpetition mortgage, for turnover of property of the estate, for damages for violation of the automatic stay and to recover

29

a fraudulent conveyance was brought pursuant to Section 349 of the Bankruptcy Code, which provides as follows:

### § 549. Postpetition transactions

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

30

(d) An action or proceeding under this section may not be commenced after the earlier of –

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 549.

34.  The complaint was timely filed, pursuant to the provisions of 11 U.S.C. § 549(d).  The limitations period may be waived if it is not pleaded as an affirmative defense.  5 Collier on Bankruptcy ¶ 549.07 (15th ed. rev. 2007), citing *Pugh v. Brook (In re Pugh)*, 158 F.3d 530, 536 (11th Cir. 1998).[11]

35.  An objection to a debtor's exemption of tenancy by the entireties property is not required in order for a bankruptcy trustee to administer the property for the benefit of joint creditors.  *Williams v. Peyton (In re Williams)*, 104 F.3d 688, 689-90 (4th Cir. 1997).  This is so because the exemption only works to keep entireties property out of the bankruptcy estate where no joint creditors are present.

36.  As indicated, the instant complaint did not rely upon the allegation that the debtor failed to properly assert an exemption in the Property based upon tenancy by

---

[11]A trustee's complaint to avoid a debtor's *prepetition* fraudulent transfer of her principal residence and a parcel of real property to herself and her non-filing spouse as tenants by the entireties need not be filed within the period for objecting to exemptions.  *In re Harry*, 151 B.R. 735, 738 (Bankr. W.D. Va. 1992).

31

the entireties.  The complaint acknowledged the debtor and his non-filing spouse owned the Property as tenants by the entireties.  Complaint, ¶ 10.  Attached to the complaint as Exhibit A is the deed to the Property in the names of the Williamses as tenants by the entireties; Exhibit B is the divorce decree dated March 2, 2006.

37.  The complaint did not assert that the debtor and his non-filing spouse are jointly indebted to anyone.

38.  Having determined conclusively in this opinion that the Property which the trustee seeks to recover in this complaint was held by the entireties, that it was properly exempted from the bankruptcy estate because there were no joint creditors present and that no individual interest of the debtor in the Property revested in him within 180 days of the petition date, the trustee's complaint must be dismissed because the Property is not recoverable as property of the estate.  *See* 5 Collier on Bankruptcy  ¶ 549,04[1] (15th ed. rev. 2007)..

39.  Because the Property in question is not property of the estate, the other causes of action asserted by the trustee must fail.  Pursuant to 11 U.S.C. § 362(c), the automatic stay of actions against property of the estate expired when the Property was exempted because it was then no longer property of the estate. Therefore, the refinance of the Property by the debtor's co-defendants when it was no longer property of the estate did not violate the automatic stay.  *See* Collier ¶ 362.03[8][c].

32

40.   The refinance of property that was exempted from property of the estate did not diminish the estate or decrease the amount otherwise distributable to creditors because this was a no-asset case.

41.   This case is distinguishable from the unpublished decision of this Court (Mannes, J.) in the case of *Rose v. Bargeski (In re Bargeski)*, [P. 72] in Adv. Proc. No. 04-1342 (February 24, 2005), affirmed in an unpublished opinion by the District Court (Titus, J.) *sub. nom Bargeski v. Rose*, 2006 WL 1238742 (D. Md. 2006), *aff'd*, 242 Fed. Appx. 945, 2007 WL 2174591 (4th Cir., July 30, 2007).  In holding that a marital home held by the entireties remained property of the estate when the wife filed bankruptcy but failed to claim the entireties exemption, the bankruptcy court granted the trustee's turnover complaint against the innocent non-filing husband to  recover one-half of the proceeds from the postpetition sale of the property after the parties' divorce.   Judge Mannes also denied the debtor's last-minute attempt to file an amended exemption of the property, based upon the debtor's bad faith.  In the instant case, this Court has held that the debtor claimed the exemption in good faith.  *Cf. In re Price*, ___ B.R. ___, 2008 WL 474123 (Bankr. E.D. Va., February 20, 2008), where the court held the debtors' amended exemption of real property pursuant to the entireties to have been made in bad faith where the property had previously been concealed by not being listed on Schedule B, and the amendment was made 17 months

33

after the case was filed and only after the trustee had filed a turnover complaint.  In this circuit, bad faith may preclude the debtor's filing of amended schedules.  *See Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 979 (4th Cir.1984).

42.  The standard of review for summary judgment motions is set forth in *Ramsey v. Bernstein (In re Bernstein)*, 197 B.R. 475, 477 (Bankr. D. Md. 1996), *aff'd* 113 F.3d 1231 (4th Cir. 1997), as follows:

> Pursuant to Fed. R. Civ. P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed.2d 202 (1986).  In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed. R. Civ. P. 56(e), made applicable by Bankr. Rule 7056.  When a motion for summary judgment is made and supported by affidavits or other evidence, "an adverse party may not rest upon mere allegations or denials. . . ."

*Id.*

43.  The trustee has lately asserted that despite the debtor's divorce having occurred more than 180 days after the petition date, a property settlement might have been executed earlier that effectively terminated the tenancy by the entireties, did not create a genuine issue of material fact.  This position is contradicted by the trustee's

own allegation in the complaint that the divorce occurred on March 2, 2006, and that "[a]s of that date, Charles Williams and Angel Williams owned the Property as tenants in common."  Complaint, ¶ 11.

44.  After a movant files a properly supported summary judgment motion, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue of material fact and must come forward with an affirmative showing of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 213 (1986).  A material fact is one that might affect the outcome of the suit, *see Anderson,* 477 U.S. at 248; and a genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* at 248-49.  The trustee's last-minute assertion four days before the hearing of the existence of a property settlement agreement did not set forth sufficient specific facts from which "a reasonable inference" can be drawn.

45.  Accordingly, the Court finds that the material facts set forth in this opinion are undisputed and that the defendants are entitled to judgment as a matter of law.

WHEREFORE, the trustee's objection to exemptions will be OVERRULED, the debtor's exemption of the Property known as 45 Russell Road, Colora, Maryland, will be ALLOWED, the defendants' motions for summary judgment will be

35

GRANTED, the trustee's motion for summary judgment will be DENIED and the instant complaint will be DISMISSED.

**ORDER ACCORDINGLY.**


**END OF OPINION**

cc:    Douglas B. Riley, Esquire
       Camilla B. Russack , Esquire
       Logan Russack, LLC
       2350 Riva Road, Suite 400
       Annapolis, Maryland  21401
       Counsel to the Plaintiff/Chapter 7 Trustee

       Lenka Janotka Koss, Esquire
       8166 Manitoba Street, Unit 5
       Playa Del Rey, California  90293
       Counsel to the Plaintiff/Chapter 7 Trustee

       Sean C. Logan, Esquire
       Logan Russack, LLC
       2530 Riva Road, Suite 308
       Annapolis, Maryland  21401
       Plaintiff/Chapter 7 Trustee

       Mr. Charles Edward Williams
       45 Russell Road
       Colora, Maryland  21917
       Defendant/Debtor, *Pro se*

       George Breschi, Esquire
       409 Washington Avenue, Suite 600
       Towson, Maryland  21204
       Counsel to Defendant Angel L. Williams

       Ms. Angel L. Williams
       1308 Red Road
       Pylesville, Maryland  21132
       Defendant

Michael N. Russo, Jr., Esquire
Amanda Lesher Olear, Esquire
Council, Baradel, Kosmerl & Nolan, P.A.
125 West Street, Fourth Floor
Annapolis, Maryland  21401
Counsel to Defendant Saxon Mortgage, Inc.

William M. Savage, Esquire
Shapiro & Burson, LLP
13135 Lee Jackson Highway, Suite 201
Fairfax, Virginia  22033
Counsel to Defendant Saxon Mortgage, Inc.

Michelle E. Stawinski, Esquire
Law Office of Michelle E. Stawinski
P.O. Box 35
Riverdale, Maryland   20738
Counsel to Defendant Settlement, Escrow, and Abstract Solutions, Inc.

Lawrence P. Pinno, Jr., Esquire
43 N. Bond Plaza
Bel Air, Maryland   21014

Office of the United States Trustee
2625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland  21201